1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

HONG HA,

          Plaintiff,

          v.

CITY OF LIBERTY LAKE, *et al.*,

          Defendant.

NO.  CV-08-382-RHW

**ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

12   Before the Court is Defendants' Motion for Summary Judgment (Ct. Rec.

13  11). A hearing on this motion was held on September 28, 2010. Plaintiff was

14  represented by Genevieve Mann; Defendants were represented by Michael

15  McFarland. For the reasons set forth below, the Court grants the motion.

16  **BACKGROUND**

17   Defendants' motion for summary judgment arises from Plaintiff's suit

18  against the City of Liberty Lake; Brian Asmus, police chief of Liberty Lake;

19  Sergeant Clint Gibson; and Detective Ray Bourgeois.  Plaintiff alleges ten claims

20  against Defendants: (1) the City and Chief failed to train their employees, resulting

21  in the deprivation of civil rights under 42 U.S.C. §1983; (2) Defendant officers

22  arrested Plaintiff without probable cause in violation of §1983; (3) Defendant

23  officers arrested Plaintiff without due process in violation of the Fourteenth

24  Amendment; (4) Defendants' actions were negligent in detaining Plaintiff,

25  resulting in pain and emotional distress in violation of Washington law; (5)

26  Defendant officers arrested Plaintiff illegally in violation of Washington law; (6) as

27  a result of the illegal arrest Plaintiff was falsely imprisoned in violation of

28  Washington law; (7) Defendant officers discriminated against Plaintiff on the basis

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT** * 1

1   of his race in violation of RCW 49.60.180; (8) Defendants intentionally inflicted

2   emotional distress on Plaintiff in violation of Washington law; (9) Defendants

3   negligently inflicted emotional distress on Plaintiff in violation of Washington law;

4   and (10) a claim for an additional money award to offset the taxes Plaintiff will

5   have to pay as a result of awards on any of his claims.

6       Sergeant Gibson and Detective Bourgeois are police officers employed by

7   the City of Liberty Lake, and supervised by Police Chief Asmus.  As a prerequisite

8   to their employment as police officers, both received training in initiating and

9   conducting contacts with suspects in the course of an investigation through basic

10  academy training and ongoing annual training.  (Ct. Rec. 41-2, 78 and 80-90).  The

11  City's policies regarding police conduct and training are encompassed in Ct. Rec.

12  41-1.

13      On August 27, 2007, Detective Bourgeois arrived at the scene of a hit-and-

14  run crash in the City of Liberty Lake.  According to both Statements of Fact, the

15  accident involved injuries.  (Ct. Rec. 12, ¶ 1; Ct. Rec. 27, ¶ 1)  After interviewing

16  eyewitnesses, Detective Bourgeois radioed that the suspect was an oriental male

17  named "Johnny" driving a red or maroon Toyota Camry.  He further specified that

18  the vehicle had departed Huntwood Industries and was westbound on Appleway.

19  (Ct. Rec. 14-3, 44, 87 (Sergeant Gibson inquired whether Plaintiff went by

20  "Johnny" at the traffic stop, supporting an inference that the name was used to help

21  identify suspects)).

22      Sergeant Gibson spotted a red Toyota Camry westbound on Appleway

23  approximately one and a half miles from the scene of the accident.  He identified

24  the driver, Plaintiff, as an Asian male.  He questioned the driver about the accident

25  and where he was coming from.  Plaintiff responded that he did not know anything

26  about the accident, but confirmed that he worked at Huntwood and was on his way

27  home from work.  (Ct. Rec. 14-3, 49, 51-52).  It is undisputed that Sergeant Gibson

28  then asked Plaintiff to follow him to the scene of the accident to appear before

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT** * 2

1  eyewitnesses present at the scene.  (Ct. Rec. 14-3, 54-55; Ct. Rec. 28-5, 26; Ct.

2  Rec. 41-2, 70).  It is also undisputed that Plaintiff did not object to this request.

3  (Ct. Rec. 41-2, 73).  Plaintiff followed Gibson, who still had Plaintiff's driver's

4  license, to the scene of the accident.  (Ct. Rec. 41-2, 71).

5      Detective Bourgeois asked a witness, the driver of an involved vehicle, if

6  Plaintiff was involved in the crash; however, the witness was unable to identify

7  Plaintiff with any degree of certainty.  (Ct. Rec. 14-2 at 26).  Sergeant Gibson

8  asked Plaintiff to sit on the curb in order to "control his movements" while he

9  searched for the eyewitness who claimed to be able to identify the driver.  (Ct. Rec.

10  14-3, 66-67).  Plaintiff does not dispute this, nor has he raised any evidence to

11  refute Defendant Gibson's statement; he merely indicates that he does not

12  remember what was said to him.  (Ct. Rec. 28-5, 27).

13      Rather than complying with the officer's request, Plaintiff began to protest

14  his innocence saying "I don't know, I didn't do anything," and waving his hands in

15  the air.  (Ct. Rec. 28-5, 27). Although Plaintiff denies doing so, Sergeant Gibson

16  testified in his deposition that Plaintiff then turned and quickly moved in the

17  direction of his vehicle.  (Ct. Rec. 14-3, 70-72; Ct. Rec. 28-5, 31).  Maneuvering

18  Plaintiff against the rear of his patrol car, Sergeant Gibson grabbed Plaintiff's right

19  hand and placed it behind his back, handcuffing him.  Gibson testified that he

20  placed Plaintiff's arm along his belt-line and handcuffed his wrists together.  After

21  applying the handcuffs, Gibson placed Plaintiff into the back of his car.  (Ct. Rec.

22  14-3, 72-77).  At this point Plaintiff asked for an interpreter; Sergeant Gibson did

23  not comply as he does not believe such a request was made.  (Ct. Rec. 28-5, 29; Ct.

24  Rec. 14-3 at 51).

25      Once the officers confirmed that the eyewitness had left the scene, Gibson

26  let Plaintiff out of the vehicle and allowed him to leave.  (Ct. Rec. 14-3, 78-79; Ct.

27  Rec. 27, ¶ 26).  Plaintiff testified that he spent approximately seven to ten minutes

28  in the vehicle.  (Ct Rec. 28-5, 28).  Dispatch records indicate that Sergeant Gibson

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT** * 3

1   logged his release at 4:23 p.m. (Ct. Rec. 28-1, 7).  It is undisputed that Plaintiff was

2   innocent of any wrongdoing.

3          Upon release Plaintiff returned to his home and called his son, a

4   chiropractor.  His son treated him for joint pain periodically from August until

5   November 2007.  (Ct. Rec. 28-5, 29-30).  There are no records attesting to what

6   treatment Plaintiff underwent or its necessity.

7                                    **DISCUSSION**

8          The Court begins by noting, as did Judge Silverman, that it is always

9   unfortunate when an innocent person is wrongfully detained by police. *Gallegos v.*

10  *City of Los Angeles*, 308 F.3d 987, 992 (9th Cir. 2002). The Court is especially

11  sensitive to an individual's fears that he or she has been targeted by police because

12  of his or her race. However, for the reasons set forth below, the Court finds that

13  Defendants are entitled to judgment as a matter of law on each of Plaintiff's claims.

14  **I.     Introduction**

15         First, Defendants argue that Plaintiff's first claim fails against the Police

16  Chief as a matter of law because the doctrine of respondeat superior has no

17  application in §1983 claims.  They argue that the claim also fails against the City

18  because Plaintiff has not alleged facts establishing a necessary element of his

19  claim: that a City policy, amounting to deliberate indifference to his rights, caused

20  the deprivation at hand.  Defendants further argue qualified immunity shields them

21  from suit on claims two through six.  Defendants argue that Plaintiff has been

22  unable to establish the essential elements of his discrimination claim (claim seven)

23  by not alleging facts tending to establish causation.  Finally, they argue that claims

24  eight and nine must be dismissed because Plaintiff has not alleged an essential

25  element of his claim: outrageous conduct.

26  **II.    Summary Judgment Standard**

27         A moving party is entitled to summary judgment when there are no genuine

28  issues of material fact in dispute and the moving party is entitled to judgment as a

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT** * 4

1  matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

2  (1986).  "An issue is 'genuine' only if there is a sufficient evidentiary basis on

3  which a reasonable fact finder could find for the nonmoving party, and a dispute is

4  'material' only if it could affect the outcome of the suit under the governing law."

5  *Albarran v. New Form, Inc.*, 545 F.3d 702, 707 (9th Cir. 2008).

6       The burden is on the moving party to show an absence of a genuine issue of

7  material fact; however, that burden shifts to the nonmoving party in response to the

8  properly submitted summary judgment motion.  *Id.*  "Mere submission of affidavits

9  opposing summary judgment is not enough; the court must consider whether the

10  evidence presented in the affidavits is of sufficient caliber and quantity to support a

11  jury verdict for the nonmovant."  *United Steelworkers of America v. Phelps Dodge*

12  *Corp.,* 865 F.2d 1539, 1542 (9th Cir. 1989) (citation omitted).  An affidavit

13  asserting "merely colorable" evidence or presenting a "scintilla" of evidence does

14  not adequately present a genuine issue of material fact.  *Id.*

15       The court must view the evidence and draw all inferences in the light most

16  favorable to the nonmoving party.  *Albarran*, 545 F.3d at 707.  "Inferences as to

17  another material fact may be drawn in favor of the nonmoving party only if they

18  are 'rational' or 'reasonable' and otherwise permissible under the governing

19  substantive law."  *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors*

20  *Assoc.*, 809 F.2d 626, 631 (9th Cir. 1987).

21  **III.   Supplemental Jurisdiction**

22       The Court has discretion to exercise supplemental jurisdiction over the

23  Plaintiff's state law claim pursuant to 28 U.S.C. §1367.  Section 1367 provides

24  that, when a federal district court has subject matter jurisdiction over a claim, the

25  court may also grant "supplemental jurisdiction over all other claims that are so

26  related to claims in the action within such original jurisdiction that they form part

27  of the same case or controversy under Article III."

28       A federal court exercising supplemental jurisdiction over state law claims

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT** * 5

1  must apply the law of the forum state.  *Paulsen v. CNF Inc.,* 559 F.3d 1061, 1080

2  (9th Cir. 2009).

3  **IV.    *Monell* Claim and Respondeat Superior**

4        The Supreme Court has consistently declined to extend respondeat superior

5  liability to municipalities for the actions of their employees in violation of 42

6  U.S.C. §1983 stating "in enacting § 1983, Congress did not intend to impose

7  liability on a municipality unless deliberate action attributable to the municipality

8  itself is the 'moving force' behind the plaintiff's deprivation of federal rights."

9  *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 400 (1997) (citing *Monell*

10 *v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)).  To determine

11 liability for a municipal defendant under §1983, the Ninth Circuit requires: the

12 deprivation of a constitutional right, and the existence of a municipal policy that

13 amounts to deliberate indifference to the constitutional right and caused the

14 deprivation.  *Anderson v. Warner,* 451 F.3d 1063, 1070 (9th Cir. 2006); *Estate of*

15 *Macias v. Ihde*, 219 F.3d 1018, 1027 (9th Cir. 2000).

16       Likewise, supervisory officials are not held responsible for the unlawful

17 actions of their employees through respondeat superior, rather "supervisors can be

18 held liable for: 1) their own culpable action or inaction in the training, supervision,

19 or control of subordinates; 2) their acquiescence in the constitutional deprivation of

20 which a complaint is made; or 3) for conduct that showed a reckless or callous

21 indifference to the rights of others."  *Cunningham v. Gates*, 229 F.3d 1271, 1292

22 (9th Cir. 2000).  Absent direct, personal involvement of the supervisor, there must

23 be a sufficient causal connection between the supervisor's wrongful conduct and

24 the constitutional violation.  *Redman v. County of San Diego*, 942 F.2d 1435, 1446

25 (9th Cir. 1991).  In order to prevail on a claim that a supervisor failed to properly

26 train subordinates, a plaintiff must show that the failure to train amounted to

27 "deliberate indifference."  *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998).

28

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT** * 6

1
2
3
4
5
6
7
8
9
10

Applied to the facts of this case, Plaintiff's claims against the City of Liberty Lake and Police Chief Asmus fail as a matter of law.  As regards to the City, Plaintiff has not established that the City's training policy amounts to deliberate indifference to his rights or that the policy was the "moving force" behind the alleged deprivation.  He has also not established that Asmus was directly involved in the conduct, that his training of Defendant Officers amounted to deliberate indifference to Plaintiff's rights, or that there was a causal link between his actions and the deprivation of Plaintiff's rights.  There is no genuine dispute of material fact for a jury to decide in regards to the claims against the City or Chief, and Plaintiff has failed to establish the necessary elements of a claim against them.

11
12
13
14

Moreover, as set forth below the Court finds that, as a matter of law, Officer Gibson did not violate Plaintiff's constitutional rights and is entitled to qualified immunity. Therefore, Plaintiff's *Monell* claims against the City of Liberty Lake and the Police Chief for failure to train will not lie.

15

**V.     Qualified Immunity from §1983 claims**

16
17
18
19
20
21
22
23

Qualified immunity shields government employees from civil suit for monetary damages unless they violate "clearly established" rights that a "reasonable person" would know about.  *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009); *Morse v. Frederick*, 551 U.S. 393, 429 (2007).  The doctrine provides immunity from suit, not just liability; therefore, the question of application must be resolved at the earliest possible stage in order to avoid complete loss of its benefits. *Pearson*, 129 S. Ct. 808.

24
25
26
27
28

Applicability of qualified immunity is determined by answering two questions; whether the facts establish a violation of a constitutional right, and whether the violated right was "clearly established" at the time of violation. *Pearson*, 129 S. Ct. at 815-816.  If answering only one of these questions would be dispositive in a case, the court has discretion to answer only that question; the court

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 7

1    is not bound to address both.  *Pearson*, 129 S. Ct. at 818 (abrogating *Saucier v.*

2    *Katz*, 533 U.S. 194, 199 (2001) (mandating that the court address both inquiries in

3    order to avoid stagnation of constitutional rights)).  Once the defendant has raised

4    the defense of qualified immunity, it is incumbent upon the plaintiff to show that a

5    "clearly established" constitutional right exists.  *See Mitchell v. Forsyth*, 472 U.S.

6    511, 526 (1985).

7        For a right to be "clearly established" the government employee must know

8    that his actions violate the right at issue, and "that in the light of pre-existing law

9    the unlawfulness must be apparent."  *Wilson v. Layne*, 526 U.S. 603, 614-615

10   (1999) (quoting *Anderson v. Crieghton*, 483 U.S. 635, 640 (1987)).  If there is no

11   binding precedent as to whether the right was clearly established, the court may

12   look to any available decisional law to determine whether the violated right is

13   "clearly established."  *Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir. 1985).

14       *(1)     Transporting a Suspect to a Crime/Accident Scene*

15

16    *Gallegos v. City of Los Angeles*, 308 F.3d 987 (9th Cir. 2002); *United States*

17   *v. McCargo*, 464 F.3d 192 (2d Cir. 2006); and *State v. Wheeler*, 108 Wash.2d 230

18   (Wash. 1987), stand for the proposition that a suspect may be transported to a

19   crime scene for identification purposes without exceeding the scope of an

20   investigative stop.  *United States v. Johnson*, 2007 WL 2492450, *7 (6th Cir.

21   2007), establishes the admissibility of suspect transportation in a hit-and-run

22   situation such as this.  In light of the Ninth, Second, and Sixth Circuit precedent, in

23   conjunction with the Washington state case, it seems apparent that no officer could

24   conclusively know whether his actions deprived a plaintiff of his rights without

25   further legal research.

26       *(2)     Detaining*

27       "To determine whether a suspect had been placed in custody, we look to ...

28   the extent to which he or she is confronted with evidence of guilt, the physical

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 8

surroundings of the interrogation, the duration of the detention and the degree of pressure applied to the individual." *United States v. Bautista*, 684 F.2d 1286, 1292 (9th Cir. 1982) (quoting *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981)) (internal quotations omitted).

Using this rubric, handcuffing a suspect or holding them in the back of police vehicle without probable cause supporting an arrest has been held to be impermissible. *See United States v. Ricardo D.*, 912 F.2d 337, 341 (9th Cir. 1990) (holding that holding a juvenile in the back of a patrol car during questioning was an unlawful arrest); *United States v. Chamberlin*, 644 F.2d 1262, 1267 (9th Cir. 1981) (holding that a twenty minute detention in the back of a patrol car was an unlawful arrest); *Booth*, 669 F.2d at 1236 (a suspect was placed "in custody" where handcuffed and made to believe that he was not free to leave).

However, handcuffing or detaining a suspect in a patrol car have also been held to be permissible extensions of an investigative stop without becoming an arrest. *See Allen v. City of Los Angeles*, 66 F.3d 1052, 1056-58 (9th Cir. 1995) (holding that handcuffing a suspect and detaining them in a patrol car for twenty four minutes was not an arrest where police had reasonable suspicion of criminal involvement); *United States v. Parr*, 843 F.2d 1228, 1229-32 (9th Cir. 1988) (holding that placing a suspect in a patrol car while searching his vehicle was not an arrest); *Bautista*, 684 F.2d at 1289 ("A brief but complete restriction of liberty, if not excessive under the circumstances, is permissible during a *Terry* stop and does not necessarily convert the stop into an arrest").

*(3)    Use of Force*

"Force is excessive when it is greater than is reasonable under the circumstances." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002). The Ninth Circuit has held that, dependent on the nature of the circumstances, application of

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 9

1   handcuffs can constitute excessive force. *Id*. (citing *Palmer v. Sanderson,* 9 F.3d

2   1433, 1436 (9th Cir. 1993)).  Causing *unreasonable* injury to a person's wrists

3   using handcuffs constitutes excessive force. *Hansen v. Black*, 885 F.2d 642, 645

4   (9th Cir. 1989) (emphasis added).  However, handcuffing is not excessively

5   forceful unless supported by factual allegations detailing specific actions that

6   caused specific injuries in the application of the handcuffs.  *See Liiv v. City of*

7   *Coeur D'Alene*, 130 Fed.Appx. 848, 852 (9th Cir. 2005) (requiring that plaintiffs

8   show a physical manifestation of injury to their wrists arising from the handcuffing

9   to bring excessive force claims); *See also Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir.

10  2005) ("we do not believe... allegations of pain as a result of being handcuffed,

11  without some evidence of more permanent injury, are sufficient to support his

12  claim of excessive force"); *Foster v. Metro.  Airports Comm'n*, 914 F.2d 1076,

13  1082 (8th Cir. 1990) (finding that without medical records corroborating plaintiff's

14  allegations of injury, handcuffing alone does not constitute excessive force);

15  *Glenn v. City of Tyler*, 242 F.3d 307 (5th Cir. 2001) (to succeed on an excessive

16  force claim arising from handcuffing, plaintiff must have more than allegations of

17  de minimis injury); *Orsak v. Metro. Airports Comm'n Airport Police Dept.*, 675

18  F.Supp.2d 944, 957 (D. Minn. 2009) ("the use of handcuffs... is a standard practice

19  in nearly every arrest.  To allow excessive force claims to survive summary

20  judgment every time a plaintiff alleged that handcuffs were painful would

21  disregard the inherent necessity of the use of handcuffs in the context of an

22  arrest"); *Peters v. City of Huron*, 2009 WL 4048684 (E.D. Cal. 2009) (handcuffing

23  not unreasonable force where plaintiff alleges only that the officer exercised

24  excessive force in applying the handcuffs).

25         Here Defendants argue that they are shielded by qualified immunity on all

26  three claims: transporting Plaintiff to the scene of the accident, detaining Plaintiff

27  at the scene, and the use of force in detaining the Plaintiff. The Court agrees.

28

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT** * 10

1    First, the Court finds that the undisputed facts do not establish that a

2    constitutional deprivation occurred. The cases cited above make clear that, under

3    certain circumstances, officers may transport a suspect to the scene of a crime and

4    briefly detain her there without violating her constitutional rights. In his briefing

5    and argument, Plaintiff attempted to distinguish these cases by arguing that the

6    instant case involves only a misdemeanor, much less serious than the types of

7    crimes at issue in the cases (e.g., a felony burglary in *Gallegos*, 308 F.3d at 991).

8    However, according to Plaintiff's own statement of facts, the accident at issue here

9    was a "'hit and run' three-car collision with injuries." (Ct. Rec. 27, ¶ 1).  Under

10   Washington law, such a suspected hit and run would be a class C felony. RCW

11   46.52.020(4)(b).  The cases set forth no requirement that the suspected crime be of

12   a certain severity, but even if they did, the Court sees no meaningful distinction

13   between a burglary and a felony hit and run.

14   Second, Defendants have also shown that they are entitled to qualified

15   immunity because it is not "clearly established" that transporting plaintiff to the

16   accident scene violates his rights.  Indeed, Defendants have presented several

17   cases, including one from the Ninth Circuit, that would give an officer reason to

18   believe that his actions were permissible.  Thus it appears that Defendants would

19   not reasonably believe their actions were impermissible in light of the fact that

20   other officers had transported suspects to crime and accident scenes without

21   violating the suspect's rights.

22   Defendants have also shown that it is not "clearly established" that placing a

23   suspect in handcuffs and detaining him in a patrol car is beyond the scope of an

24   investigative stop, thus becoming an arrest.  A determination of whether a suspect

25   is in custody is made based on the totality of the circumstances; however, that

26   standard is applied on a case by case basis and has resulted in the determination

27   that officers using similar measures in relatively similar situations have not

28

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT** * 11

1   unlawfully arrested suspects.  Therefore, Defendant Officers would have been

2   justified in believing that their actions likewise did not constitute a per se violation

3   of Plaintiff's rights.

4       Finally, Plaintiff has not alleged any use of force beyond the application of

5   handcuffs in a fairly standard manner.  In his briefing and argument, Plaintiff

6   consistently stated that Officer Gibson should have used the least amount of force

7   available. But the cases set forth no such requirement; rather, officers must use an

8   objectively reasonable amount of force under the circumstances.  *Bryan v.*

9   *MacPherson*, 608 F.3d 614, 620 (9th Cir. 2010).  Here, it is undisputed that

10  Plaintiff failed to follow Officer Gibson's direction to sit on the curb, began

11  yelling, and waved his arms. Under these circumstances, it was objectively

12  reasonable to restrain Plaintiff in handcuffs in a standard manner. *See, e.g., Tatum*

13  *v. City and County of San Francisco*, 441 F.3d 1090, 1096-97 (9th Cir. 2006).

14      Accordingly, the Court finds that Defendants are entitled to summary

15  judgment on Plaintiff's § 1983 claims against Officer Gibson.

16
17  **IV.   Qualified Immunity from State Law Claims**

18      "An officer has state law qualified immunity from suit for false arrest where

19  the officer (1) carries out a statutory duty, (2) according to procedures dictated to

20  him by statute and superiors, and (3) acts reasonably." *McKinney v. Tukwila*, 103

21  Wash. App. 391, 407 (Wash. Ct. App. 2000).

22      Here, the Court finds that Defendant Officers are eligible for qualified

23  immunity under state law.  First, police officers act under statutory authority to

24  uphold the laws of the state of Washington.  RCW 10.93.070.  Second, Defendant

25  Officers acted in general accordance with their training and the procedures

26  promulgated by the City of Liberty Lake contained in Ct. Rec. 41-1.  Finally, for

27  the reasons set forth above the Court finds that the officers acted reasonably.

28

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT** * 12

## V.   Racial Discrimination

RCW 49.60.030 declares discrimination on the basis of one's race is a violation of one's civil rights, stating "[t]he right to be free from discrimination because of race, creed, color, national origin, sex... is recognized as and declared to be a civil right."

Plaintiff has not alleged facts sufficient to establish his claim under RCW 49.60.030.  Plaintiff only argues that Defendant Gibson "assumed he went by a nickname" due to his race, and that Plaintiff had identification showing otherwise. (Ct. Rec. 26, 18-19).  Plaintiff does not allege facts showing that this assumption caused his detention.  Indeed, as the record shows, Defendant Officers had reasonable suspicion based on factors other than the possible use of a nickname. Even if the officers believed that Plaintiff did not use a nickname, other factors would have provided sufficient reasonable suspicion to continue the investigatory stop.  As set forth above, the Court has not found that Plaintiff was deprived of his rights under either federal or state law; even if so, Plaintiff has not made a showing of fact that Defendants' actions were motivated by Plaintiff's race, thus failing to establish a violation of his civil rights under RCW 49.60.030.  Accordingly, the Court grants Defendants' motion with respect to this claim.

## VI.   Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress entails three elements: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 149 Wash.2d 192, 195 (Wash. 2003).  The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id*. (quoting Restatement (Second) of Torts § 46 cmt. d). Furthermore, the conduct alleged must be such that, if told to an objective person,

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 13

would tend to "arouse his resentment against the actor and lead him to exclaim 'Outrageous!'" *Id*. at 196.

For the reasons set forth above, the Court finds that Defendant Officers acted reasonably under the circumstances. Accordingly, Plaintiff has failed to identify any extreme or outrageous conduct that could support this claim, and it must fail.

## VII.   Negligent Infliction of Emotional Distress

To establish liability for the tort of negligent infliction of emotional distress a plaintiff must prove: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty of care; (3) proximate cause; (4) damage; and (5) "objective symptomatology." *Strong v. Terrell*, 147 Wash. App. 376, 387 (Wash. Ct. App. 2008) (citing *Kloepfel*, 149 Wash.2d at 198; *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wash.2d 233, 243-245 (Wash. 2001)).  To establish the element of "objective symptomatology" the plaintiff must prove his "emotional distress is accompanied by objective symptoms and the emotional distress must be susceptible to medical diagnosis and proved through medical evidence." *Id*. at 388.

This claim fails because, for the reasons set forth above, Defendant Officers acted reasonably and did not breach their duty of care to Plaintiff. Moreover, Plaintiff has failed to create a genuine issue of material fact as to the element of "objective symptomatology." Accordingly, the Court grants Defendant's motion with respect to this claim.

## VIII.   Conclusion

The Court finds that Officer Gibson acted reasonably under the circumstances, and therefore is entitled to qualified immunity under both federal and state law. Consequently, each of Plaintiff's attendant claims must fail.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** * 14

1    Accordingly, **IT IS HEREBY ORDERED:**

2    1.  Defendants' Motion for Summary Judgment (Ct. Rec. 11) is

3  **GRANTED.**

4    2.   All other pending motions are **DENIED as moot.**

5    3.   The District Court Executive is directed to enter judgment in favor of

6  Defendants and against Plaintiff on all of Plaintiff's claims.

7    **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

8  Order, forward copies to counsel, and **close the file.**

9    **DATED** this 15th day of October, 2010.

10

11             *s/Robert H. Whaley*
              ROBERT H. WHALEY

12            United States District Judge

13

14

15

16  Q:\CIVIL\2008\Ha\sj.ord.wpd

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT** * 15